THE VILLAGE OF NORTH CHILLICOTHE

*v.*

ALLSTON BURR.

*Opinion filed April 17, 1900.*

1. EJECTMENT—*plaintiff must show the superior title where the source is common.* Where the plaintiff alleges common source of title, which is denied by the defendant but the proof shows such source to be common, the burden is upon the plaintiff to prove that his title is superior to that of the defendant.

2. DEDICATION—*in case of common law dedication grantee takes subject to easement.* In case of a common law dedication of land·to the public, subsequent grantees of the original owner take subject to· the easement created, and they cannot deprive the public of possession previously taken.

3. SAME—*effect where territory platted as addition to city is organized into village.* Where the streets indicated upon a platted addition to a city are dedicated to the public the rights of the public therein are preserved, even though the dedication is not accepted by the city, if the territory embraced in the plat is organized into a village, and the streets are recognized and worked by the village before the plat has been vacated or any steps taken to annul the dedication.

4. SAME—*statutory dedication does not fail because plat is made before incorporation.* A statutory dedication will not fail because the plat is made and recorded before incorporation of the territory, but the fee will remain in abeyance until the corporation is formed.

5. EVIDENCE—*what fact tends to show a, completed dedication.* That the owner of land, after making and recording a plat, conveyed by general warranty deed certain of the lots, in which deed the subdivision of the tract into lots, blocks and streets and the recording of the plat are recited, tends to show a completed dedication.

APPEAL from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

WINSLOW EVANS, and COVEY & COVEY, for appellant:

If a party has no title at the time he dedicates the property, he and his grantees are still estopped from denying the fact of dedication. *Napa v. Holland,* 87 Cal. 84.

The acknowledgment and. recording of a plat has all the force and effect of a grant. It operates by way of

estoppel, and concludes the former owner, and all claiming through or under him, from asserting title. *Canal Trustees* v. *Haven,* 11 Ill. 554.

If a plat is recorded before a town has a corporate existence the fee remains in abeyance, subject to vest in the corporation the moment it is created. *Canal Trustees* v. *Haven,* 11 Ill. 554; *Gebhardt* v. *Reeves,* 75 id. 301; *Brooklyn* v. *Smith,* 104 id. 429.

There is no higher evidence of dedication than a plat acknowledged and recorded. It informs the public that those spaces marked upon it as streets and alleys are for the use of the public, and until the town becomes incorporated they are under the control of the county authorities, to be worked and kept in repair, if necessary, for the public convenience. *Waugh* v. *Leech,* 28 Ill. 491.

When a town is regularly laid out, platted and the proper acknowledgment thereof made and recorded, the streets and alleys must preserve the width given to them by the plat, and not to be enlarged or contracted by any powers. The gift of the streets is to the public, with the width the proprietor may choose to give them. *Waugh* v. *Leech,* 28 Ill. 488.

The acceptance of a dedication need not be formal, but may be shown by circumstances, such as continued use by the public, by improvements and repairs of the highway, by grading or the like, or by taking charge of the highway by public officials. Jones on Easements, sec. 449; *Reese* v. *Chicago,* 38 Ill. 336.

Where the inhabitants of a town or village, after laying out the town into blocks, lots and streets, become duly incorporated, and from time to time thereafter elect requisite officers, and the authorities adopt ordinances, work upon the streets, etc., this will afford conclusive evidence of the acceptance of the streets. *Lee* v. *Mound Station,* 118 Ill. 304.

It is a familiar rule that in an action of ejectment the plaintiff must recover on the strength of his own title

and not on the weakness of the title of the defendant. *Agnew* v. *Perry*, 120 Ill. 655.

H. C. PETTETT, and STEVENS, HORTON & ABBOTT, for appellee:

A dedication can only be made by the owner of the land in fee. Jones on Easements, sec. 444; *Smith* v. *Young*, 160 Ill. 169.

A primary condition of every valid dedication is that it be by the owner of the fee. *Baugan* v. *Mann*, 59 Ill. 492.

In order to show a dedication it is necessary that the person alleged to have made the dedication was the owner, as no one but the owner of land can make a dedication of it. *Harding* v. *Hale*, 83 Ill. 501.

A dedication of property for public use is in the nature of a conveyance for the purposes of the use, but a person can convey no more or greater title than he holds. If he has no title, or his title is conditional and it fails, the dedication fails. *Elson* v. *Comstock*, 150 Ill. 303.

Dedication is not established where the evidence, in all its bearings, tends to prove the lack of any settled, definite purpose on the part of the owner of the land. *Mason* v. *Chicago*, 163 Ill. 351.

To constitute a valid dedication there must be both the intention to dedicate on the part of the donor and the acceptance of the dedication by the public authorities. *Hamilton* v. *Railroad Co.* 124 Ill. 363.

An intention to dedicate land must be clearly and unequivocally manifested by the owner. There must be an acceptance of the dedication. *Eckhart* v. *Irons*, 128 Ill. 577.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee, Burr, brought ejectment against the appellant village to recover certain strips of land in the corporate limits of the village, and which had been designated on a plat and had also been improved and used as streets. The plea was not guilty. Burr, the plaintiff, filed an affi-

davit that the defendant and he claimed title through a common source,—that is, from one Samuel T. Howe,—and defendant filed an affidavit denying that it claimed title through said Howe as a common source with plaintiff, but stating that it claimed title through and from one E. B. Purcell. The case was tried by the court without a jury and judgment was given for the plaintiff. Defendant then took this appeal.

To prove his case the plaintiff gave in evidence three deeds to the property in controversy and other property: First, a quit-claim deed dated January 10, 1896, from Samuel T. Howe and wife to E. B. Purcell; second, a quit-claim deed dated January 20, 1896, from Purcell and wife to Howell Jones; and third, a quit-claim deed dated January 20, 1896, from Jones and wife to Allston Burr, the plaintiff. He then rested his case. The defendant then offered in evidence, in proper order, two certain plats, together embracing all of the land in controversy, certified to as owner of the land described therein and acknowledged by E. B. Purcell in November, 1887. The first plat was certified to by "C. A. Sias, Eng'r," which certificate stated that the plat was a true and correct plat of Santa Fe addition to the city of Chillicothe, as surveyed by him (Sias) on the 11th day of November, 1887, and stated also the starting point of the survey and described the boundaries. The second plat, of other lands but embracing certain streets sued for, and purporting to be Santa Fe third addition to the city of Chillicothe, was made in February, 1888, and certified to in substantially the same manner as the first. Each plat was, in the same month it was made and certified, filed for record in the office of recorder of deeds in Peoria county. These plats showed the subdivision of the land into lots and blocks, streets and alleys, gave the names of the streets, and also, as we think, with sufficient certainty, their width. The lots and blocks were numbered and their lengths and widths given as required by the statute.

It does not appear that the city of Chillicothe ever accepted the plats of these purported additions or extended its jurisdiction to the territory platted, but in 1890 the inhabitants of this and adjacent territory established, in the manner provided by law, the village of North Chillicothe, which then became duly incorporated and organized. Several of the streets as platted were thereafter improved and used as such by the public, and in 1895 the streets and parts' of streets now in controversy were opened by the village authorities and plowed, preparatory to grading. This was all done before any of the deeds given in evidence by the plaintiff were made. There was some evidence that some of the land was in cultivation by somebody, and that one of the attorneys who appeared for plaintiff in the trial below objected to the opening of the streets and threatened to enjoin the village, but the plaintiff did not then have any interest in the land. Previous surveys of the streets had been made according to the plats and to the stakes set by the original survey. The evidence shows that the village authorities were in possession of these streets before the execution of any of the deeds in plaintiff's chain of title.

The plaintiff objected to the admission in evidence of the plats,—first, because it did not appear that Purcell was the owner of the property when they were made; second, because they were not certified or acknowledged according to law; third, because the widths of the streets and alleys were not shown by the plats; fourth, because it was not shown that the city of Chillicothe accepted the offer of dedication; and fifth, because the distances, courses and other marks on the plat were not explained by the certificate of the surveyor. The court admitted the plats subject to the objections, but'later in the trial sustained the objections and excluded the plats.

Before considering these objections it is proper to consider the case as it stood when the plaintiff rested, as shown by the pleadings and proof.

The defendant having denied, on oath, that it claimed title through a common source with plaintiff, and having stated that it claimed title through E. B. Purcell, it was incumbent on plaintiff to prove title in himself as at common law. This he could have done in one of two ways: First, by showing such title derived from a paramount source of title, as from the government; or, second, by proving that he and the defendant did claim through a common source and that his was the better title. (*Smith* v. *Laatsch,* 114 Ill. 271.) But plaintiff made no attempt to trace his title back of Howe, nor to prove that Howe had any title or was in possession claiming title when he conveyed. Nor did he prove that Howe was the common source of title of himself and the defendant. The mere quit-claim deed from Howe to Purcell, considered in connection with the other two deeds, at most only tended to prove that that deed was the origin of the only title the plaintiff had. But these deeds, in connection with defendant's allegations and proof, did show that they both claimed title through a common source and that that common source was Purcell. Neither party, under these circumstances, did or could deny that Purcell had had title, and as the plaintiff was bound to recover, if at all, upon the strength of his own title and not on the weakness of the defendant's, it devolved on him to prove that his right was superior to the defendant's. But did he do this? As before shown, the plaintiff made no attempt to do so, except to give in evidence the quit-claim deed from Howe to Purcell. This was one step to prove his allegation that Howe was the common source of title, but as no proof was offered that defendant also claimed through Howe, this deed was ineffectual to prove a common source, and, as before said, it was, standing alone, no proof of title in Purcell. There was no proof that Purcell was in possession under that deed, to raise the presumption that that was the title under which he held, and, consequently, the title under which both parties

claimed.   As we said in *Littler* v. *City of Lincoln,* 106 Ill. 353 (on p. 365): "Quit-claim deeds, and even warranty deeds, do not prove that the grantee had no prior title. It is within every day's experience that persons, out of abundance of caution, take deeds from different parties for the same real estate."   The three deeds were made upon a nominal consideration, near the same time, in the State of Kansas, where Purcell, in his deed to Jones, described himself as residing, and they certainly contained nothing in themselves showing how Purcell derived the title under which both parties claimed as a common source.   If plaintiff's chain of title from Howe had run through another than Purcell it would be incontrovertible that he failed to show a right of recovery, however weak the defendant's right may have been.   But the alleged chain passing through Purcell, thereby, in connection with the defendant's claim, making him the common source of title of both parties, the plaintiff could at most recover only by sustaining the burden he had assumed, of showing that his title from Purcell was better than the defendant's from the same source.   We say *at most,* for it is not necessary to consider whether, having alleged one common source, he could in the proof rely upon another. It is sufficient to sustain the error assigned that the plaintiff did not prove superior title in himself from Purcell.

In *Smith* v. *Laatsch,* 114 Ill. 271, this court said (p. 276): "Prior to the adoption of the present statute regulating the practice in this class of cases, the plaintiff, in order to relieve himself from the burthen or danger, as the case might be, of deducing title from the government of the United States, or some other independent source of title, was bound to show not only his own claim of title back to the common source, but that of the defendant also, and if, upon this showing, the plaintiff appeared to have the better title he would be entitled to recover, but not otherwise."   And on page 279: "We are of the opinion that the object, and sole object, of the legislature in its

adoption was to relieve the plaintiff, in cases of this kind, from the burden of proving˜the defendant's chain of title as well as his own, unless the defendant would deny, by counter-affidavit, that he claimed from the alleged common source of title, in which event the burden still remained upon the plaintiff, just as it did before, of proving both chains of title, running back to a common source."

But even if it were held that when the plaintiff rested he had established *prima facie* a right to recover, the plats offered in evidence were sufficient to overcome any presumption raised in his favor.   Even if the plats as made and certified were not, under the statute, sufficient to prove a statutory dedication, or a grant by Purcell, the common source of title, of the fee in the streets to the village, they were,·with the other evidence, sufficient to establish a common law dedication to the use of the public, and if the fee passed from Purcell by his deed to Jones, and from Jones by his deed to the plaintiff, it was burdened with the easement in favor of the public, and the village could not be deprived of possession. (*Maywood Co.* v. *Village of Maywood,* 118 Ill. 61.)   These plats were made, certified to and acknowledged by Purcell, describing himself as owner, and by the surveyor, describing himself as "C. A. Sias, Eng'r," eight years before plaintiff's quit-claim deeds were executed.   Inasmuch as both parties claimed through Purcell, the first objection urged, without proof to support it, that he was not the owner when he caused the survey and plats to be made, certified and recorded, should not have prevailed.

Under the second objection urged, that they were not properly certified, it is argued here that the survey could, under the statute, have been made only by a competent surveyor, and that "Eng'r" does not necessarily mean "surveyor."   It is a sufficient answer to say that this objection was not made when the plats were offered in evidence, and that if it had been, the defendant might

have been able to give explanatory proof of the technical significance of the term, which would have obviated the objection.

Nor do we think the objection should have prevailed that the width of the streets was not stated on or by the plat. The name of each street, and figures denoting its width, are given. But it is said that it is not shown whether the figures "66" denote feet, inches or chains. The certificates of the engineer and the owner, and the plat itself, taken as a whole, show that the distances, and the lengths and widths of the streets, blocks, lots and alleys, are given in feet. *Town of Lake View* v. *LeBahn,* 120 Ill. 92.

The next objection made to the plat is, that the offer of dedication was made to the city of Chillicothe and as an addition thereto, and not to the appellant village, nor, presumptively, to any village to be created or organized after the plat was made and recorded. It is urged that the owner might wish to have his said lands incorporated within the city of Chillicothe, to which they were adjacent, but not within a separate village to be thereafter organized. We have held in several cases that dedication as a statutory one will not fail because the plat is made and recorded before the incorporation, but that the fee will remain in abeyance until the corporation comes into existence. (*Village of Brooklyn* v. *Smith,* 104 Ill. 429; *Marsh* v. *Village of Fairbury,* 163 id. 401.) These plats were made and recorded in 1888, and the village embracing this territory was organized in 1890, and soon after some of the streets were re-surveyed and improved, and afterward, in 1896, those here in controversy, yet it does not appear that the owner vacated the plat or took any steps to revoke the dedication. It is to be borne in mind that the dedication of the use of the streets was to the public, and that the municipality, upon acceptance, became merely the trustee for the public, and held (if a statutory dedication) the fee in trust.

In *Rhodes* v. *Town of Brightwood*, 145 Ind. 21, (43 N. E. Rep. 492,) a similar dedication of a park had been made by the subdivision of a tract of land and the making and recording in 1872 of a plat of the Oak Hill addition to the city of Indianapolis. The city did not accept the proposed addition, and in 1876 the town of Brightwood was incorporated and in 1880 annexed the Oak Park addition to its own corporate territory. The court said: "Another contention made by counsel is, that the addition in which Morris Park is situated was made to the city of Indianapolis and not to the town of Brightwood, and that the town therefore had no claim upon the park so dedicated. Counsel forget that the dedication was made for the use of the public, and particularly the property owners and residents in the addition itself. The appellee town is but a trustee for the public. Any individual having a particular interest in the park might have taken the proper steps to maintain the dedication, if the town, as trustee, had failed to do so,"—citing Elliott on Roads, 88, and other authorities. We agree with the view there taken, and it disposes of the same question in this case. If the owner had intended that there should be no dedication unless accepted by the city of Chillicothe he could have vacated his plat as provided by law. But this he did not do.

While the plat cannot be set up as a model to be followed, we are of the opinion that there was a substantial compliance with the statute and that it is good as a statutory dedication, and under the statute operated as a grant with warranty of title in fee, by which Purcell and his subsequent grantees are bound and estopped. But, as before said, if the plat and other evidence established only a common law dedication the village could not be ousted of its possession by one who has not shown a superior right. Another fact tending to prove a completed dedication, appearing in the evidence but not referred to by counsel, is, that in 1888, after making and recording

the plats, Purcell and wife, by their deed of general warranty, conveyed to others certain of the lots described in the two additions, in which deed the subdivision of the tract into lots, blocks and streets, and the recording of the plats, are recited.

We are of the opinion that the court below erred in excluding the plats and in rendering judgment for the plaintiff, and that judgment should have been rendered for the defendant. The judgment will be reversed and the cause remanded for further proceedings in accordance with this opinion.            *Reversed and remanded.*