## NAPOLEON B. GILL

*v.*

## THE GRAND TOWER MINING, MANUFACTURING AND TRANSPORTATION COMPANY *et al.*

1. PARTITION—*sufficiency of description of land.* A petition for the partition of lands which shows that the patentee of two adjoining quarters of land, one of which was fractional, giving their numbers, by will devised the same to petitioner and A, except sixty acres thereof, which was directed to be divided into lots; that the sixty acres not having been laid out into lots, descended to the six sons and daughters of the testator, the petitioner being a son, who, by the purchase of outstanding interests, became the owner in fee of said land, except the shares of two of the heirs, naming them, in the sixty acres; that the petitioner, by deed, in 1846, conveyed the land to one J, except twenty acres, reserved to satisfy the claims of the two heirs who had not conveyed, and that J conveyed the land with a like reservation to the defendant; and that since the petitioner conveyed in 1846, he had acquired, by purchase, a large portion of the interest of the two heirs in the twenty acres so reserved out of the sixty acres,—though subject to demurrer was held not so defective as to debar the petitioner of all relief upon a hearing, and that it was apparent the land sought to be set apart to the petitioner was twenty acres out of the quarters named.

2. CONVEYANCE—*description of land reserved.* Where a whole tract of land is conveyed by its numbers, excepting and reserving twenty acres, without describing such twenty acres, the reservation will be good, and the owner thereof will become a tenant in common with the owner of the balance of the

tract in the proportion the twenty acres bear to the number of acres in the whole.

3. SAME—*estoppel to assert after-acquired interest.* Where a party conveys a tract of land by warranty deed, excepting twenty acres, such twenty not being described, the covenant of warranty will not extend to and embrace the twenty acres so reserved, and if the grantor afterwards acquires the title thereto, he will not be estopped from asserting the same, and he may have the same set apart to him on petition for partition.

4. DESCENT—*not defeated by creation of a naked power of sale in will.* Where a testator devised all of his land except sixty acres, directing the sixty acres to be laid out into lots, some of which his heirs were to take and the balance to be sold, but no action was ever taken to lay out and select the lots, and no sales made, it was *held,* that this direction, there being no trust created, did not prevent the sixty acres from descending to his heirs.

5. WILL—*direction void for uncertainty.* A direction in a will that sixty acres of the testator's farm, on which he resided, be laid off in town lots, and disposed of by giving one lot to each of several of his children and more to others, and the balance to be sold to the highest bidder, is void for uncertainty, where no one is appointed to divide the land, and no size of lots is given, and no particular lot is devised to any one person, and the land so ordered to be divided will descend as intestate property.

APPEAL from the Circuit Court of Jackson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Mr. DANIEL H. BRUSH, for the appellant.

Mr. THOMAS G. ALLEN, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a petition for partition brought by Napoleon B. Gill, in the circuit court of Jackson county, against the Grand Tower Mining, Manufacturing and Transportation Company, to set apart and divide certain lands in Jackson county. On the hearing the court dismissed the petition, and this decision is assigned as error.

It is, however, contended, on behalf of the defendant, that the decision was right for two reasons: First, because the petition does not contain a particular description of the premises sought to be divided, as required by statute; second, on

the ground that petitioner, under the proof, is estopped from asserting title to the lands on account of the covenants contained in a deed he executed September 7, 1846.

While the petition was not as skillfully prepared as it might have been, and while it doubtless contains defects which might be reached by demurrer, yet we do not regard the petition so defective as to debar the petitioner of all relief on a final hearing on answer, replication and proofs.

It appears from the petition that James Gill died seized of fractional sec. 23 and the north-west quarter of sec. 24, in town 10 south, range 4 west; that said James Gill died testate in 1827; that said land was devised to petitioner and Geo. W. Gill, sons of James Gill, except sixty acres thereof, which the testator set apart and directed to be laid out into lots, to be disposed of as set forth in the will. It is then averred that the sixty acres, not having been laid out into lots, as provided in the will, descended in equal parts to the sons and daughters of the deceased, (who are named, and are six in number). It is then averred that the petitioner, by purchase of outstanding interests, became the owner in fee simple of said land, except the shares of two of the heirs (naming them), their interests being one-sixth part each in said sixty acres. It is then averred that petitioner, by deed dated September 7, 1846, conveyed the land to Herod M. Jenkins, except twenty acres, reserved to satisfy the claims of the two heirs who had not conveyed. It is then alleged that Thos. W. Jenkins, son and only heir of Herod M. Jenkins, conveyed the land to the West Carbon Coal and Railroad Company, excepting and reserving the twenty acres, as in the other deed; that the name of the last grantee was changed to the Grand Tower Mining, Manufacturing and Transportation Company. It then appears, from averments of the petition, that since petitioner conveyed in 1846, he has purchased a large portion of the interests of the two heirs in the twenty acres, which they claimed out of the sixty acres which was originally directed to be divided into lots.

From the various averments of the petition it is apparent that the land sought to be set apart to the petitioner is twenty acres out of fractional sec. 23 and the north-west quarter of sec. 24, in town 10 south, range 4 west, in Jackson county. From some expressions in the earlier decisions of this court there might be some doubt in regard to the right of a party to have twenty acres out of a certain tract of land set off, on account of a supposed defect in a description of that character; but in *Smith* v. *Crawford*, 81 Ill. 296, it was held that if the owner of a tract of land conveys a number of acres less than the whole without designating their locality, the grantee acquires an interest in the whole tract as a tenant in common, in the proportion which the number of acres conveyed bears to the whole tract. Here, a certain tract was conveyed, excepting and reserving twenty acres, without describing it. Under the rule announced in the case cited, the owner of the twenty acres became a tenant in common with the owner of the balance of the tract.

We now come to the other ground relied upon by the defendant. The deed of the petitioner, made in 1846, contains covenants of warranty, and as to all land conveyed by the deed he is no doubt estopped by his covenants from asserting an after acquired title. But did he convey the land he now seeks to recover? The language of the deed is as follows: "All that piece or parcel of land situated, lying and being in the county of Jackson and State of Illinois, known, designated and described, and bounded as follows, to-wit: fractional section 23 and the north-west quarter of section 24, of township 10 south of range 4 west, except twenty acres, which is reserved to satisfy the claim or claims which the heirs of Nancy Louisiana Gill, daughter and one of the heirs of James Gill, and also Cyrus Theodore McClintock, son and only heir of Narcena Emeline McClintock, who was also daughter and one of the heirs of James Gill, who was patentee to the above described lands, whose claims and interests are set forth by the last will and testament of the said James Gill, now on record

in the recorder's office in the county of Jackson and State of Illinois, and also one lot of ground that was willed to Cynthia Hunt by the said James Gill, which is also hereby excepted: To have and to hold the above described premises," etc.

From the language used in this deed it is manifest that twenty acres of the land embraced in the whole tract was not intended to be conveyed, but, on the other hand, it was expressly reserved and excepted from the operation of the deed. If this be true, the covenants of warranty did not extend to and include the twenty acres. We perceive no reasonable construction which could be given to the language used which would include the twenty acres in the conveyance.

Our conclusion, therefore, is, that such title as the petitioner obtained to the twenty acres of land in question after the execution of the deed in 1846, he had the right to assert, notwithstanding the covenants in his deed, as such covenants only referred to the land actually conveyed.

The petitioner derived title mainly by deed from the heirs of James Gill, treating the will in reference to this particular land as invalid. This we think was correct. The provision of the will in reference to the land was as follows: "It is my will that sixty acres of the place that I now reside on be laid off in town lots, and be disposed of in the manner hereinafter directed: First, to Cynthia Hunt I give and bequeath one lot,—the lot that John Hunt's store now stands on; to Garland Laughlin I give and bequeath one lot; to Samuel Laughlin I give and bequeath one lot; to Geo. W. Gill I give and bequeath two lots; to Eliza Elvira Gill I give and bequeath two lots; to Narcena Emeline Gill I give and bequeath two lots; to Napoleon B. Gill I give and bequeath two lots; to Maria Louisa Gill I give and bequeath two lots; to Nancy Louisiana Gill I give and bequeath two lots." The balance of the lots the testator directs sold to the highest bidder. The land was never divided into lots, nor was any part of it ever sold as town lot property. Indeed, no action whatever was

had as to this property by the executor, or any one else under the will.

In regard to the direction that a sale should be made of lots, this, where no action was taken under the will, would not prevent the property from descending to the legal heirs of James Gill in all respects as an intestate estate. Where no trust is created, but a mere naked power given to sell, and no sale having been made, such would not defeat the right of the heirs to take the property, as provided by the statute of Descents.

In regard to the other provision, that the lands shall be divided into town lots, it was void for uncertainty. No person was appointed to divide the land into lots, no size of lots is given, nor is there any particular lot devised to any one person. Suppose some one acting under the will had attempted a division of the land into lots, what size could he have made them, under the will? The will is silent on this point. Or, suppose the land had been lotted, by what method is it to be determined what lot shall belong to each devisee? Where the intention can be ascertained, the law requires each and every clause of a will to be carried into operation; but where there is so much uncertainty that the real intention can not be ascertained, then, of course, the provision of the will obscured in doubt must fall. Here it would be impossible to execute the direction indicated in the will, and the land directed to be divided into lots must descend as an intestate estate.

The decree of the circuit court will be reversed and the cause remanded.

*Decree reversed.*