(No. 32692.

MELL POWELL, Appellant, *vs.* TRUSTEES OF SCHOOLS OF TOWNSHIP 16, HENRY COUNTY, *et al.,* Appellees.

*Opinion filed May 20, 1953.*

JAMES H. ANDREWS, HARPER ANDREWS, and CAMPBELL ANDREWS, all of Kewanee, for appellant.

SHAW & CHAMBERLAIN, and MABEL W. BROWN, both of Geneseo, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This appeal seeks a review of a judgment entered by the circuit court of Henry County wherein the plaintiff failed in his action for declaratory judgment to have fixed in him the title to a schoolhouse site located on his 120-acre farm.

The complaint herein was filed on October 13, 1949. It alleged that the plaintiff was the owner and in possession of a certain 120-acre tract and that the defendant Trustees of Schools is a corporation, and for many years, and until about two years previously, maintained and operated a public school on a small tract of about three fourths of an acre in area on the southwest corner of his farm, at which time school was closed and the school site was abandoned; that in the summer of 1949 the defendant Trustees of Schools held a public sale and auction and pretended to sell said school lot with the school building located thereon

to defendant Creighton Wilson for $1130, and received from said purchaser a portion of the purchase price at said sale; and that they are preparing a deed to said land for delivery to said purchaser in exchange for the balance of the purchase price; that defendants claim said school lot adversely to plaintiff and plaintiff will be greatly injured and damaged by the completion of said sale; that plaintiff has requested defendant Trustees of Schools to vacate said school lot but said defendant contends it has a superior right to said property and a dispute exists between plaintiff and defendant as to the ownership and right of possession of said lot, and thus a justiciable controversy exists between plaintiff and defendant as to the right of possession of said school lot and the use thereof. Wherefore plaintiff prayed that the court order, adjudge, and decree that plaintiff is the owner of the entirety of the 120-acre tract, which is described in the complaint, including the school lot mentioned.

Afterwards, Ada Wilson was made an additional defendant, and all defendants filed answers. The answers of all defendants deny that the plaintiff, or his predecessors in title, have ever been in possession of said schoolhouse lot or have any right or title thereto or have ever made claim thereto until the commencement of this suit, and aver that prior to the year 1866 a public school was established in what was then known as District No. 3, and a public schoolhouse was erected on a small tract of land containing less than three fourths of an acre in the southwest corner of the tract, and aver adverse possession of said tract for public-school purposes from that time until September, 1947, when District No. 3 became a part of Unit School District No. 226 in Henry County. Thereafter proceedings were taken, as provided by statute, for selling the schoolhouse tract and schoolhouse which are in controversy in this proceeding. The answers admit that no record exists of there ever having been a conveyance of said tract to the Trustees of Schools, but that the defendants have title by

adverse possession; further aver that plaintiff's title is derived from Oliver C. Barnes, who purchased the land now owned by the plaintiff by deed dated April 12, 1866, recorded April 16, 1866, in Book 54 of the records in the office of the recorder of deeds of Henry County, at page 54, and that the deed to Oliver C. Barnes, following the description of the 120-acre tract, contained the following words: "excepting the School House Lot," and that by said deed Oliver C. Barnes acquired no title to the schoolhouse lot in question, and that the subsequent deeds in plaintiff's chain of title, purporting to convey the entire 120-acre tract, did not convey to him title to the schoolhouse site by reason of the exception. The answers further averred that defendant Wilson, on October 13, 1949, and before the service of summons in the case, had paid the balance of the purchase price and received from the defendant school trustees a deed for said premises which had been executed on October 5, 1949.

There is no conflict as to the controlling facts in this case. On the trial it was stipulated that the title from the government to the 120-acre tract was in one H. D. Davis on May 10, 1854, and that on February 11, 1856, H. D. Davis conveyed to Oliver D. Barto, by warranty deed, the entire 120-acre tract. A deed was introduced from Oliver D. Barto and wife to Oliver C. Barnes, containing the words "excepting the School House Lot." The deeds in the chain of title from Barnes down to the plaintiff for the 120-acre tract did not contain any exception of the schoolhouse lot.

Plaintiff, Mell Powell, testified he was 62 years of age and had lived in the vicinity practically all his life and that the school building had been in the present location as long as he could remember; that he lived on the land and farmed it from 1906 to 1946; that he had never measured the area used, while the school was operated, as a schoolyard but imagined it was about one third of an acre and might

be a little more; that there was a garage and a coal house and two outside privies, and that there is a fence around this schoolyard and it has been there as long as he could remember; that he had been familiar with that location since about 1904 and the schoolhouse was in its present location when he first knew the place and continued to be in the same location. He further testified that nobody occupied the schoolyard and building from the time it was abandoned as a school until the Wilsons entered; that he went by there every week and "watched what was going on in the schoolhouse and went in and looked at it sometimes;" that Charles Ball, son-in-law of Wilson, lives there now on the school lot; that the farm buildings are about 80 rods east and about 20 rods south of the schoolhouse over on the other forty, that is, the southeast quarter of the southwest quarter; that to get to the farm buildings "we used the road that was put through in 1914 that runs between section 8 and section 5 east and west. We go south from the farm residence to the highway and we have used the road to the south fence since 1915. Before that we came down the 20 rods north along the fence between the two 40's and went through the schoolyard. The gate is still there. My tenants and employees went through the schoolyard every year as long as there was a school, whenever we had any lime or produce to haul. We would go through the school yard and have the corn picker come in to pick corn and would go through the school yard instead of going down a narrow lane. We went through there every month of the year except may be in February."

Evidence was offered showing that the schoolhouse lot was not excepted on the tax lists and that taxes had been paid on the entire 120 acres from the year 1865 when Oliver D. Barto was the owner.

The evidence further showed that the plaintiff had been a member of the school board from the year 1922 until the new Unit District was organized, and he was then elected

a member of the board of the new Unit District and was still a member.

At the close of the evidence for the plaintiff, the defendants made a motion to find the issues in favor of the defendants and judgment was entered in favor of the defendants and against the plaintiff, and it was adjudged that the plaintiff was not at the time of said sale, and is not now, the owner of the small tract in controversy.

The complaint did not assert a right to the schoolhouse lot by reason of any alleged adverse possession but relied upon the legal title. In plaintiff's reply brief, it is stated that there was no claim by plaintiff that he took title to the lot by adverse possession. Therefore, the judgment of the trial court must be affirmed unless the record shows that the plaintiff has the legal title to the schoolhouse lot.

A plaintiff in ejectment must recover on the strength of his own title and not upon the weakness of that of his adversary, and if he claims title in fee he must show a fee-simple title and must deraign title from the government where there is no proof of a common source of title, nor of possession by plaintiff of the strip of land in controversy in himself nor in any prior grantor with whom he connects himself. (*Krause* v. *Nolte,* 217 Ill. 298; *Allott* v. *Wilmington Light and Power Co.* 288 Ill. 541.) There is no reason that this rule would not apply in an action for declaratory judgment as to title, which relies upon the legal title as the basis for the relief sought.

The record shows that Oliver D. Barto owned the 120 acres, and that he conveyed it to Oliver C. Barnes on April 12, 1866, but excepted therefrom the schoolhouse lot. This deed is in the chain of plaintiff's title and not only was Oliver C. Barnes estopped to deny the recital in that deed but since the deed was duly placed of record all persons claiming in the chain of title from Oliver C. Barnes are likewise estopped. *Ambarann Coal Corp.* v. *Old Ben Coal Corp.* 395 Ill. 154; *Wiley* v. *Lamprecht,* 400 Ill. 587.

Plaintiff seeks to avoid the effect of the exception in his chain of title on the theory that the defendants offered no proof of the location of the schoolhouse lot in 1866 when the Barto deed was filed and that the exception is void for uncertainty, and on the further ground that since the deeds in his chain of title subsequent to the Barto deed included the entire tract of 120 acres it made a *prima facie* title in plaintiff since there was no evidence of adverse possession of the schoolhouse lot.

We believe the trial court properly rejected the contentions of the plaintiff. It is well established that an exception in a deed is valid if the excepted land can be made certain by parol evidence. No other reasonable inference can be drawn from the words in the deed "excepting the School House Lot" than the presence of a schoolhouse somewhere on the 120-acre tract. If the exception had been "a lot for school purposes" then it might reasonably be argued that there was a tract of ground that could not be located by parol evidence on which it was expected to build a schoolhouse, but it is obvious that the tract of ground within the contemplation of the parties was one upon which a schoolhouse had already been erected. In other words, "School House" identifies the "Lot."

We do not believe that there was any burden upon the defendants to affirmatively prove that there was a schoolhouse on the premises at the time the Barto deed was made, but, on the contrary, the presumption is that there was a schoolhouse on the premises. If the plaintiff in this case contends contrary to the reasonable inference, then from logical reasoning, the burden was upon the plaintiff to make such proof. We think the authorities so hold. *Maxwell Land Grant Co.* v. *Dawson,* 151 U.S. 586, 38 L. ed 279; *Corinne Mill, Canal & Stock Co.* v. *Johnson,* 156 U.S. 574, 39 L. ed. 537; *Rock House Fork Land Co.* v. *Gray,* 73 W. Va. 503, 80 S.E. 821; *Reusens* v. *Lawson,* 91 Va. 226, 21 S.E. 347 and 359; *Hall* v. *Martin,* 89 Ky. 9, 11 S.W. 953.

We have held in *Brenneman* v. *Dillon,* 296 Ill. 140, 148, that a deed to "my house and lot" or to "one-half of my lot" may be made sufficient by extrinsic evidence; and in *Wiley* v. *Lamprecht,* 400 Ill. 587, 592, that a clause "Excepting the road way as now located" and "Subject to existing road way easements and to the rights of the public in any and all legal established highways" could be made definite and certain by parol evidence; and in *In re Estate of Frayser,* 401 Ill. 364, that a provision "The grantor reserves surface of one-half acre, where family cemetery is" does not render the description uncertain. We said that the reference to the family cemetery is a sufficient indication of the location of the reserved portion. In *Guyer* v. *Warren,* 175 Ill. 328, a description was held certain when "Our farm in LeClaire's reserve, Rock Island county, and consisting of eighty-three and 31-100 acres, more or less" was used. Of course, "eighty-three and 31-100 acres, more or less" would not be definite, but we held that the word "Our" indicates that the farm referred to was a farm owned by the vendors in the contract and it can be shown with certainty what lands the appellees owned within the reserve and county named.

The fact that the number of acres constituting the schoolhouse lot was not mentioned is immaterial since, in the case above cited, the statement of "eighty-three and 31-100 acres more or less" was entirely indefinite, but the reference that it was the farm of the vendors permitted parol evidence to show the boundaries of the farm. In this case it is immaterial whether there was one third of an acre in the schoolhouse lot, as testified to by the plaintiff, or whether it was about three fourths of an acre as alleged in the complaint.

In *Honey* v. *Gambriel,* 303 Ill. 74, in an action to enjoin defendants from interfering with the use of a certain lot described as a cemetery lot, and to have the boundaries of the lot fixed by decree, the deed conveyed a 40-acre tract

"except one-half acre where the graveyard is now situate and a passway from the road thereto." The chancellor denied the injunction and refused to determine the lines of the half acre reserved as prayed in the bill, but on appeal we reversed and held that, while the language of the deed does not designate or describe a particular one-half acre, the description did sufficiently designate the location of the tract reserved to enable a court of equity to fix the boundary of the one-half acre tract with the graveyard as the center of the tract.

We think, in principle, the case of *Thomas* v. *Jewell*, 300 Mich. 556, 2 N.W. 2d 501, 139 A.L.R. 1335, is controlling on the merits of the instant case. In the *Thomas case* the exception was "except 10 rods square lying in the northeast corner, which is leased to the School District as long as occupied for school purposes, with the right to occupy only," and it was held that upon the termination of the lease by abandonment of the land by the school district the land belonged to the successors of the grantor, and not to those of his grantees.

In this case we hold the exception in the Barto deed to be sufficient as a valid exception and therefore the title would remain in Barto or his successors if it be held that the rights of the school trustees were abandoned upon ceasing to use the premises for school purposes. The argument of the plaintiff that when a party has a deed for a tract of land, actual possession of a part will, in law, constitute possession of all of the tract not in the adverse possession of another, is not relevant to the instant case, since the record conclusively shows that the Trustees of Schools, as far back as the plaintiff could remember, had the adverse possession of the schoolhouse lot in dispute and evidently that possession has been held as far back as April 12, 1866, when Barto conveyed the 120 acres to Barnes and excepted the schoolhouse lot.

In the brief of plaintiff considerable reliance is placed on the case of *Miner* v. *Yantis,* 410 Ill. 401, which, in many respects, is analagous to the situation before us. These are distinguishing features, however: (1) In the *Yantis case* the plaintiff had title to the entire tract, evidenced by an unbroken chain from the government. In the instant case the chain of title is broken by the deed from Barto to Barnes, which contained the words "excepting the School House Lot;" (2) In the *Yantis case* the school authorities had been in possession of the premises for over fifty years. There was no deed to them and nothing of record, similar to the exception in the Barto deed, to indicate that they had any interest in the premises. In the *Yantis case* it was held that the school trustees could acquire title by adverse possession, but under the facts of that case, such adverse possession had not been shown. The basis of this finding was that at the time the school authorities had first acquired an interest in the premises involved, the applicable law provided that school authorities could select schoolhouse sites and they should "have the right to take the same for the purpose of a schoolhouse site either with or without the owners' consent." The language above quoted, upon which the court relied to defeat a title by adverse possession, was not in the applicable statute when recognition was first made by the Barto deed, dated April 12, 1866, that there was a schoolhouse site at its present location. That provision was added in 1881. Starr and Curtis Annotated Statutes, 1885, Vol. 2, p. 2226 and 2227.

Since the plaintiff does not claim title by adverse possession and has not proved adverse possession, the payment of taxes is of no significance. (*Kurz* v. *Blume,* 407 Ill. 383, 390.) Plaintiff asserts error in describing in the final judgment order a certain tract of land without any evidence of the boundaries of the tract claimed by defendants. It seems that, in the judgment appealed from, is copied

from the answer of the defendant Wilson the description used in his deed by the school trustees, and no evidence was introduced at the trial to show the actual boundaries of the schoolhouse lot. However, the record shows that the order of the court found the issues for the defendants and denied the prayer for declaratory judgment, and judgment was rendered by the court in favor of the defendants and against the plaintiff; that plaintiff was not, at the time of said sale, and was not now, the owner of the real estate described in the complaint, viz.: a small tract of about three fourths of an acre in the southwest corner of the 40-acre tract on which a public school was situated. This was a sufficient judgment, denying the declaratory judgment sought, and the description of the premises in accordance with the boundaries set forth in the deed executed by the School Trustees may be entirely rejected as surplusage, and does not vitiate the judgment.

The judgment of the circuit court finding the issues for the defendants and denying the prayer for a declaratory judgment is hereby affirmed.  *Judgment affirmed.*